UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LISA LARKIN,

                    Plaintiff,

          -against-                                        05 Civ. 0595 (LAK)


RICHARD MARTIN,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

          Appearances:


                    Lewis B. Oliver, Jr.
                    *Attorney for Plaintiff*


                    Ronald G. Dunn
                    Lisa F. Joslin
                    Daniel A. Jacobs
                    GLEASON, DUNN, WALSH & O'SHEA
                    *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*[*]

          This is a sexual harassment case brought under 42 U.S.C. § 1983 by Lisa Larkin, a

secretary employed in the research unit of the New York State Governor's Office of Employee

Relations ("GOER"), against Richard Martin who, at the time of the events in question, was her direct

supervisor and the head of GOER's research unit.  The case was tried to a jury, which returned a

---

[*]          United States District Judge for the Southern District of New York, sitting by designation.

special verdict finding that Martin sexually harassed Larkin, but that Larkin had not established that he had done so under color of state law. Judgment therefore was entered for the defendant. The matter is before the Court on Larkin's post-trial motions. In the circumstances, it is necessary to address only so much of her motion as seeks a new trial on the ground that the verdict on the color of state law issue was against the weight of the evidence.

*Facts*

*A.    The Evidence*

The evidence may be summarized briefly. Martin, then the assistant director of the research unit, came to know Larkin, who was employed as a secretary on the executive floor of GOER's offices, in the late 1990's. When he needed a new secretary, he encouraged her to apply for the position and recommended that she be selected, which in fact occurred.

By all accounts, Larkin and Martin hit it off very well. She was, in Martin's words, the best secretary he had ever had. The relationship became extremely cordial, with each confiding a great deal of quite personal information to the other. Larkin willingly engaged in at least one and quite probably a number of sexually-tinged pranks and games with Martin in the office. The two discussed their other relationships – Larkin, a single mother, was in a long term relationship with another man and Martin was married – and their sex lives. Moreover, Martin accommodated Larkin's need for particular working hours to pursue a second job and to care for her extremely disturbed son. But the interaction between Larkin and Martin was not so limited, at least from some time in 2003 until February 2005.

During that period, Martin periodically hugged Larkin – in his office, in the parking area associated with the state office building in which they worked, and elsewhere – and from time

to time moved his hand to her buttocks.  He gave her gifts.  He brought flowers to her in the parking area at the end of some work days.  On one occasion that received much attention at trial, he groped her in his office.

B.     *The Submission of the Issue to the Jury and the Verdict*

Much of the trial focused on the question whether Larkin welcomed these attentions and physical contact.  It appears that Larkin did not outwardly object to Martin touching her until the summer of 2004, when she asked him to stop and he did so save for one incident that he claimed was inadvertent and for which he apologized.  But there was abundant evidence from which the jury was entitled to find, and obviously found, that Martin's behavior, at least after a point, was unwelcome and constituted sexual harassment.  Thus, the pivotal question on liability, although that perhaps was not obvious to the parties at the time, became whether Martin had acted under color of state law.[1]

The draft verdict form proposed submitting the color of state law issue to the jury,[2] and plaintiff's counsel did not object to it.[3]  Both sides requested jury instructions on this issue, and the

---

[1]

As plaintiff pursued here only her claim under 42 U.S.C. § 1983, she was obliged to prove not only that she was sexually harassed, but that the harassment was committed under color of state law.  *E.g., Hayut v. State Univ. of New York,* 352 F.3d 733, 743-44 (2d Cir. 2003).

Plaintiff, it might be noted, had other options.  She originally sued in this Court also under the New York State Human Rights Law, N.Y. EXEC. L. § 296, a claim which did not require proof that the alleged harassment occurred under color of state law.  During pretrial proceedings, however, plaintiff elected to pursue that claim in the New York Supreme Court, Albany County.  The parties have not fully informed this Court of the current status of that action, although they have provided a copy of a decision granting in part and denying in part Martin's motion to dismiss the complaint for failure to state a cause of action.

[2]

Court Exhibit C, Question 2.

[3]

Oliver Aff. [DI 121] Ex. 3 [hereinafter "Tr."], at 2.

Court charged as follows:

> "The fact that Mr. Martin was employed by the State does not necessarily mean that he acted under the color of state law. One acts under the color of state law to the extent that one exercises power possessed by virtue of a state law and made possible only because the person is clothed with the authority of state law. State officials act under the color of state law when they act within their lawful authority. However, they act under the color of state law also when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts under the color of state law if the official abuses or misuses a power that he or she possesses only because he or she is an official. The location of an action – that is to say, whether it occurred in or out of the official's workplace – is not dispositive of whether the action is or is not under the color of state law.

> "It is thus firmly established that a defendant acts under the color of state law when he abuses the position given to him by the State. In other words, Mr. Martin will have acted under the color of state law to the extent, if any, that he acted in his official capacity and abused the position given to him by the State."

Plaintiff did not object to the charge.[4]  Indeed, her memorandum on this motion concedes that it was correct.[5]

During deliberations, the jury requested clarification of a portion of the instructions on the color of state law issue.  At that point, Larkin asked that the Court in substance to direct a verdict for her on that issue.  The Court declined to do so,  in part because Larkin had not made such a motion before the jury had retired and had not objected to the submission of the issue to the jury.[6]  The Court instead gave a supplemental instruction as follows:

> "Liability in a case like this one for alleged sexual harassment by a state official – and there is no dispute that Mr. Martin was a state official – is predicated upon some authority that the accused wrongdoer has over the victim by virtue of the

---

[4]    *Id.* at 6-8, 108.

[5]    Pl. Mem. At 35-36.

[6]    Tr. at 111.

wrongdoer's position as a state official.  That authority may be actual or apparent.  In either case, however, there must be a nexus – in other words – a connection between the fact that the official has or appears to act with the authority of the state and the official's harassment of the plaintiff.  Where the official abuses the authority reposed in that official by the state, the official acts under color of state law. [citations omitted]

"In this case, you have heard evidence about some actions by Mr. Martin that clearly were taken in his role as Ms. Larkin's supervisor.  One example is evidence that Mr. Martin gave directions or instructions about hours of work or attendance.  Other alleged actions occurred in circumstances in which, Ms. Larkin argues, his actions were taken by him as her supervisor or, at least, that he was enabled to take those actions because he had authority over her because he was her supervisor.  In at least some of those situations, however, it is Mr. Martin's position that whatever took place was  was personal between two people who, he says, were friends and that he was not enabled to act as he did as a result of the fact that he was Ms. Larkin's supervisor.

"In the last analysis, it is up to you to decide, according to the instructions I have given you, whether Ms. Larkin has proved by a preponderance of the evidence that Mr. Martin sexually harassed her while he acted under color of state law."

Larkin made no clear objection apart from asking that the Court direct a verdict on the issue.[7]

As the jury continued to deliberate, the Court asked whether the parties wished to

withdraw that issue from the jury altogether and allow the Court to decide the pertinent law and facts:

"If the parties were agreeable, one way to go would be simply to withdraw question 2 from the jury all together [*sic*] on the understanding that if it is a matter that can be resolved as a matter of law, it's for me anyway; and if it is not a matter that can be resolved as a matter of law, but is a question of fact, I would have the authority under Rule 49 to decide it as a question of fact."[8]

_____

[7]

*Id.* 124-30.

Larkin here argues that this supplemental instruction rroneously made the issue whether Martin acted under color of law depend upon his subjective motives. Pl. Mem. 26-37. As the quoted language makes clear, however, that was not the case.  While it summarized the parties' contentions, it reiterated the instruction that the *sine qua non* of action under color of law is abuse of state authority and referred also to the original, and concededly correct, instructions.

[8]

*Id.* at 131.

Plaintiff, however, rejected that invitation.[9]  The jury then returned its verdict.

## Discussion

A.     *The Submission of the State Action Issue to the Jury*

Plaintiff first argues that the Court erred in submitting the state action issue to the jury. She implicitly complains that it should have directed judgment in her favor on that point.

The short answer to this contention is that plaintiff admittedly neither objected to the submission of the state action question to the jury nor sought a judgment as a matter of law on the point until after the jury retired to deliberate and sent in a note seeking clarification of the Court's charge with respect to the state action issue.  The failure to object to the submission of the state action issue before the jury retired to deliberate, either by an appropriate motion under Rule 50 or by an objection to the special verdict form, waived the point.[10]

To be sure, the lack of an objection to the submission of the issue to the jury does not preclude review for plain error.[11]  In order to prevail on that basis, however, plaintiff must "establish

---

[9]

    *Id.* at 132.

[10]

    *E.g., Sims v. Village of Albion*, 115 F.3d 1098, 1109 (2d Cir. 1997) ("party who fails to object to jury instructions or to the substance of special verdict questions to be put to the jury has no right to object to those matters on appeal"); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992) ("party who failed to object, before the jury retired, to the substance of special verdict questions to be put to the jury has no right to object to such matters on appeal"); *see Meacham v. Knolls Atomic Power Laboratory*, 381 F.3d 56, 69 (2d Cir. 2004) ("party is not entitled to challenge on appeal the sufficiency of the evidence to support the jury's verdict unless it has timely moved in the district court for judgment as a matter of law on that issue"), *vacated and remanded on other grounds*, 544 U.S. 957 (2005).

[11]

    *See, e.g., Sims,* 115 F.3d at 1109.

(1) error, (2) that is plain, and (3) that affects substantial rights."[12] "An error," in other words, is "plain' if it is 'clear' or 'obvious' at the time of appellate consideration."[13]

Plaintiff now argues that a defendant who supervises a public employee necessarily acts under color of state of law as a matter of law.[14]  She maintains that it therefore was plain error to submit the issue to the jury

As an initial matter, plaintiff's contention that the Court should have taken the color of state law issue away from the jury is not appealing in view her rejection of the Court's offer, after the Court supplemented its instructions on that issue, to withdraw the color of state law issue from the jury.  By so doing, she at least arguably waived her contention that the submission of the issue to the jury was plain error.

Even if the point still were available to plaintiff, it would not be clear that her legal contention is correct, let alone that the failure to take the color of state law issue from the jury on that basis was plain error.  The cases in our Circuit simply do not appear to go quite as far as plaintiff would have it, particularly on facts such as those here.[15]   Even if they did, however, the point would be immaterial for purposes of this motion.  In view of plaintiff's failure to object to submission of the

---

12

    *United States v. Gerow*, No. 08-2208-cr, 2009 WL 3377918, at *1 (2d Cir. Oct. 20, 2009) (internal quotation marks and citations omitted).

13

    *Id.* (quoting *United States v. Thomas*, 274 F.3d 655, 667 (2d Cir.2001) (en banc)).

14

    Pl. Mem. 24.

15

    *Compare Hayut v. State University of New York*, 352 F.3d 733 (2d Cir. 2003) (state university professor acted under color of state law in sexually harassing student in view of professor's power and authority over student), *with Temple v. United States*, 447 F.3d 130 (2d Cir. 2006) (action is taken under color of state law where the action is "made possible only because the wrongdoer is clothed with the authority of law").

8

issue to the jury and to the charge and, for that matter, to seek judgment as a matter of law on this

point, the only relief to which she would be entitled if there were plain error would be a new trial.

The same conclusion would follow in any event because the jury, acting pursuant to instructions to

which neither side objected, returned no verdict as to damages, a subject inextricably intertwined with

the issue of liability.  As the Court grants a new trial on other grounds, there is no present need to

decide whether plaintiff is correct in arguing that Martin's position as Larkin's supervisor necessarily

required the conclusion that everything he did was under color of state law.


*B.*     *The New Trial Motion*

Our circuit recently has stated the standard governing the color of state law issue as

follows:

"We have noted that

[t]he Supreme Court has broadly interpreted the color of law requirement,
concluding that '[m]isuse of power, possessed by virtue of [federal] law and
made possible only because the wrongdoer is clothed with the authority of
[federal] law, is action taken "under color of [federal] law."'

*United States v. Walsh,* 194 F.3d 37, 50 (2d Cir.1999) (quoting *United States v.
Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). Color of law and
pretense of law are synonymous, and acts of officers engaged in "personal pursuits"
are not included. *See Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89
L.Ed. 1495 (1945). Although no "bright line" separates actions taken under color of
law from personal pursuits, *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir.1994), the
"relevant question" in determining whether an action was taken under color of law "is
not whether the [action] was part of the defendant's official duties but, rather, whether
the [action] was 'made possible only because the wrongdoer is clothed with the
authority of [federal] law,'" *Walsh,* 194 F.3d at 51 (quoting *Classic,* 313 U.S. at 326,
61 S.Ct. 1031). One who abuses a position given to him or her by the government is
said to act under color of law. *West v. Atkins,* 487 U.S. 42, 49-50, 108 S.Ct. 2250, 101

L.Ed.2d 40 (1988)."[16]

Martin, as Larkin's supervisor, concededly possessed power with respect to her by virtue of state law. The question for the Court therefore is whether the jury's finding that Larkin failed to prove that he exercised or abused that power in sexually harassing Larkin was seriously flawed or a miscarriage of justice.

The jury evidently concluded that the personal relationship that developed between Martin and Larkin during the period 1998 through some time in 2003 was an extracurricular matter between two consenting adults who came to know one another because they worked in the same office. The fact that Martin was Larkin's supervisor, they at least arguably were entitled to determine, was not significant. It would be inappropriate for the Court to overturn such a conclusion given the evidence at trial. But the situation undeniably changed, and Martin's position as Larkin's superior began to play an important role in what transpired. By his own admission, Martin repeatedly hugged her and touched her posterior in a corner of his office, an office to which he had summoned her, ostensibly to perform her duties. He repeatedly kept her in his office for long discussions about how to restore their relationship to what it had been in days past, something that Larkin found so distasteful that she asked a co-worker to call her out of Martin's office to take imaginary telephone calls. And there were a number of discussions concerning Larkin's time and attendance – a subject as to which Martin clearly spoke with the authority of the State – that occurred in the context of his focus on the deteriorating personal relationship. These discussions were at least implicit threats that Martin would use his authority as a state official to take adverse employment action with respect to Larkin unless she conformed to his wishes.

---

[16]

*Temple,* 447 F.3d at 138.

All of this, and more, occurred in the context of the fact that Larkin was a vulnerable individual. She was divorced from an emotionally and physically abusive former husband. She was a single mother raising a seriously disturbed and, at least on one occasion, violent and possibly suicidal son who was hospitalized twice for emergency psychiatric attention. As Martin knew, perhaps better than anyone, she needed the job and the salary badly.

In sum, there came a point in 2003 or 2004 when, as the jury found, Martin's behavior became abusive and unwelcome, even assuming for the purpose of argument that it was not so at the outset. Once that line was crossed, Martin was able to continue because he was Larkin's boss and she needed the job. While I fully respect the jury's conscientious weighing of a difficult issue, I am persuaded that the verdict on this issue was seriously erroneous.

*Conclusion*

For the foregoing reasons, plaintiff's motion for a new trial and other relief is granted to the extent that the verdict is set aside and a new trial is granted.

SO ORDERED.

Dated:        December 8, 2009

Lewis A. Kaplan
United States District Judge